Good morning. My name is Jervis Wise and I have the pleasure of representing the appellant Cordera Hill in this case who is actually seated in the gallery. Members of the Court, we had raised four issues in our initial brief, the first of which was the sufficiency of the evidence to support the substantive and conspiracy charges for which Mr. Hill had been convicted in this case. I would suggest as we had set forth in the brief that as to the substantive charges, Mr. Hill's alleged conduct did not violate the illegal remunerations statute for which he had been charged. With regards to the conspiracy, I would suggest as we set forth in the brief that based on the evidence presented, even when viewed in the light most favorable to the government, no reasonable trier of fact could have found that Mr. Hill had willfully joined in this alleged conspiracy. It was inadvertent. He just accidentally joined in. No, Your Honor. I would suggest There are all these communications back and forth, emails, meetings, testimony which we have to credit at this stage of the proceeding about I'll pay those, no, you pay those, why are you paying them more, so forth and so on. And I would suggest, Your Honor, based on that evidence, there was certainly sufficient evidence for a trier of fact to find that he had knowledge of the conspiracy. But there was not a witness who testified that Mr. Hill paid them any kickback or remuneration to go see a doctor. He certainly was very persuasive in getting people to go. There were people who were part of the alleged team cream who certainly did make payments, including Mr. Miller who testified. But even Mr. Miller did not testify to Mr. Hill actually having made payments. After leaving the clinic, Bloom, Hill went to an ATM, withdrew some money and paid Bloom $400. That's correct, Your Honor. And those were the two, the payment to Ms. Bloom and to Ms. Mayweather were the two payments that made up the substantive charges. And I'm sure that the government will argue that those were remunerations that would have been relevant to the conspiracy. Of course, the government doesn't have to argue that. All the government has to argue is a jury reasonably could have inferred. They do, Your Honor. And a jury reasonably could have inferred that. Well, I respectfully disagree, Your Honor, and the reason being is because with regards  The claim was made to Mr. Hill's girlfriend in order for her best friend to travel out from Hawaii. There was not even a discussion until after she got here. And Hill just regularly brings in friends of his girlfriend to fly there, pays for their expenses. But he did regularly bring in Ms. Bloom and he had told Ms. Mayweather for months, I believe, that he was going to give her a Christmas present by flying her friend out. Now he certainly did and we do not dispute that once both Ms. Bloom and Ms. Mayweather were here. Mr. Hill talked to them about going to the clinic, took them to the clinic, and then persuaded them. And a jury could infer from that that's why he paid her. Well, Your Honor, I would suggest that based on particularly with Ms. Mayweather that they could not because it was done after the fact. It was not actually an inducement to get either of them to travel here. The purpose of the travel and the inducement for the travel was to have a social visit. When you say it was done after the fact, what fact was it done after? It was done after they visited the clinic and got the cream. That's the after the fact. Well, and I apologize, Your Honor, what I was referring to with regards to Ms. Mayweather was the discussion. I know, but the jury could infer that the fact that it was after that mattered was the visit to the clinic and obtaining the creams, which was part and parcel of the entire conspiracy which the jury had heard all the evidence about the meeting of the minds about that. They had. And, again, Your Honor, I would certainly suggest the jury could have found knowledge. They could have found that Mr. Hill was involved in, obviously, recruiting patients to the clinics, but I would suggest that based on the evidence presented that it was not reasonable for them to find either that the payments to Bloom and Mayweather were inducements or that he ever willfully joined in the actual illegal remuneration payments. You're arguing that he has an explanation for why he paid for travel. But, again, it comes back to the issue of what could a jury have reasonably inferred. Correct. And I would suggest based on the testimony, it was not reasonable for them to infer that Mr. Hill was actually making payment as inducement for either of those two ladies to travel. The purpose of the travel was for social visits, and I would suggest that's all the evidence permitted a finding of, particularly with regards to Ms. Mayweather's. Another issue that I feel compelled to address, given the time that I have, is the calculation of the guidelines in this particular case. And I think your brief is pretty clear on that, and I think you've probably got a winning argument and I understand that the government's pretty much agreed with you on that. Why don't you do this? Why don't you save your time? And I mean save it. We'll add it if you need it on that issue, and if the government pushes back on our questions about that issue, we'll let you respond in full about it. Thank you, Your Honor. I'd be glad to do that. And may I, before I take a seat, may I address one case in regards to that that I came across last night that I had not cited, which is United States v. Neary. Whoa, whoa, whoa, slow down. United States v. Neary, Your Honor. N-E-R-E-Y, it's 877 Federal 3rd 956, and it was, it came out in December when we were in the midst of briefing. I think it's somewhat relevant to the guidelines calculation. Okay. Thank you. Thank you. Ms. Altman, why don't we, to avoid confusing me, take it backwards and see if you have any disagreement with the net profit argument that he's made on the sentencing guideline calculation. Thank you, Your Honor. We have a disagreement with the overall outcome under the guidelines. That is correct, and that is why we are not opposing a remand. We believe that there was a problem here with the guidelines interpretation. There are two major issues for sentencing, which is the interpretation of 2B4.1, and then relevant conduct. Because there was a problem with the interpretation issue right off the bat, the relevant conduct factual findings have not been made, and we don't think that we can get to what the court did with the findings and the admitted facts in the PSI. So that is why we are not opposing a remand. All right. So the government's position is vacate and remand on the sentence, but leave open the relevant conduct issue as well as correcting the net profit issue, right? Yes, Your Honor. That is our position. We would like to be able to present the correct evidence and support the factual findings that the court needs to make. But we would like to start with a clear understanding of the fact that this is an improper benefit conferred and not a loss under 2B1.1. Okay. And, Your Honor, we are aware also of the Nary decision. That's a relevant conduct decision. The relevant conduct effective loops have assumed the guidelines interpretation. I believe that both sides have pointed this court to the relevant law with DeVater. We also gave the court under 28J the two unpublished decisions that we think bear on the issue. And again, we're coming down to the decision of 2B4.1 versus 2B1.1. I'd also like to point out to Your Honors, because any remand may affect, of course, other cases, other compound and cream cases, other conspiracy cases, that we have here a rather unique factual situation. We originally charged the defendant as part of a conspiracy with Centurion Creams and the pharmacy. We originally charged a conspiracy to both receive and pay kickbacks. But we then narrowed that in the superseding indictment, and we specifically charged only payment from the defendant. That causes us a problem at sentencing under relevant conduct, and that's also why we would like to go back and redo. Would Your Honors like me to explain further? No, you would have us vacate and remand for resentencing on the correct definition, improper benefit conferred, and you're just asking us to add, we leave open any issues. Correct, Your Honor. Okay. I'm sorry. I didn't realize that I had fully answered that. Would Your Honors like to hear also about the sufficiency? I have some easy sites for the most direct inferences for both the conspiratorial agreement and for the substantive offenses. Do you have any questions about the guilt statement? We don't really have any issues about, no, any questions we'd like to raise about that, but if you'd like to implant some questions about your case in our mind, you're welcome to do so. No, thank you, Your Honor, but thank you for the invitation. Thank you. Thank you. Mr. Weiss, I think she largely agrees with you on the sentencing issue, but if you'd like to say something about whether relevant conduct ought to be left open, district court really didn't address that. I agree, Your Honor, and I don't, and the only argument I was going to make was to propose what perhaps the net benefit calculation might be when the case is remanded, but I may be putting the cart before the horse in regards to that, and I do agree with the government that based on the record we have, it's essentially impossible to determine what the net benefit would have been at this stage without the case being remanded back to the district court. Okay. All right. Thank you. We'll take that case under submission. Next up is Wilson v. Parker.